**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PRESLIE HARDWICK,
　　　　　　*Plaintiff-Appellant*,

v.

COUNTY OF ORANGE; MARCIA
VREEKEN; ELAINE WILKINS; THE
ESTATE OF HELEN DWOJAK,
　　　　　　*Defendants-Appellees.*

No. 17-56292

D.C. No.
8:13-cv-01390-
JLS-AN

OPINION

Appeal from the United States District Court
for the Central District of California
Josephine L. Staton, District Judge, Presiding

Argued and Submitted April 11, 2019
Pasadena, California

Filed November 18, 2020

Before: A. Wallace Tashima and Richard A. Paez, Circuit
Judges, and William Alsup,*  District Judge.

Opinion by Judge Paez;
Partial Concurrence by Judge Tashima

---

*  The Honorable William Alsup, United States District Judge for the
Northern District of California, sitting by designation.

# SUMMARY[**]

## Civil Rights

The panel affirmed the district court's judgment that plaintiff could not invoke issue preclusion to bar litigation in her action against Orange County and County social workers alleging Fourth and Fourteenth Amendment violations arising from plaintiff's removal from her mother's custody.

A juvenile court ordered plaintiff's removal in 2000, in the midst of dependency proceedings arising from her parents' divorce litigation. Plaintiff's mother brought a state court action in 2001 against County social workers, and a jury found that defendants violated the mother's right to familial association and awarded damages. Plaintiff subsequently filed her federal action in 2013 against the same defendants, arguing in part, that her mother's prior state court litigation conclusively determined that her removal from her mother's custody violated her right of familial association. Plaintiff argued that defendants were therefore precluded from relitigating the issue of liability.

The panel held that where constitutional familial rights are at stake, there are identical companionship rights between a parent and child that could allow a plaintiff to invoke issue preclusion to bar relitigation of issues previously decided. In this case, however, plaintiff could not assert issue preclusion because her mother litigated more than just the overlapping companionship rights in her state

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

court case and the panel could not determine the basis for the jury's verdict. Plaintiff therefore failed to establish that the issues litigated in the prior state proceeding were identical to the issues raised in her federal case.

Concurring in part and concurring in the judgment, Judge Tashima stated that he concurred in the judgment on the ground that plaintiff failed to establish the application of issue preclusion because of the special verdict's ambiguity in the prior case. Judge Tashima wrote, however, that the majority engaged in an unnecessary discussion of the contours of the familial association right, and he dissociated himself from the majority's assertion that a child's correlative right of familial association includes no custody component.

## COUNSEL

Robert R. Powell (argued), Powell & Associates, San Jose, California; Dennis R. Ingols, Law Office of Dennis R. Ingols, San Jose, California; for Plaintiff-Appellant.

Norman J. Watkins (argued) and Pancy Lin, Lynberg & Watkins APC, Orange, California, for Defendants-Appellees.

**OPINION**

PAEZ, Circuit Judge:

In November 1999, the Orange County Social Services Agency ("SSA") filed a dependency petition on behalf of Preslie Hardwick and her sister, Kendall Hardwick, against their parents, Cary and Deanna Hardwick.[1]  The juvenile dependency court assumed jurisdiction over the children, but the court permitted the children to remain in their mother's custody and to have supervised visitation with their father. During the course of the dependency proceedings, the social workers informed the court about missed visits and phone calls between the children and their father.  Defendant Marcia Vreeken, a social worker, also represented to the court that Hardwick told the children their father was trying to take them away from her.  In February 2000, the dependency court ordered that Preslie and Kendall be removed from Hardwick's custody.

In 2001, Hardwick filed an action in California superior court, asserting, among other claims, that County of Orange ("Orange County") social workers, including Vreeken, Vreeken's supervisor, Helen Dwojak, and another social worker, Elaine Wilkens, violated her constitutional right to familial association. Hardwick alleged that Vreeken and Dwojak fabricated evidence and made misrepresentations to the dependency court to obtain removal of her daughters from her custody.  Hardwick's case proceeded to trial against the social workers and Orange County.  The jury returned

---

[1] We refer to Deanna Hardwick as "Hardwick" throughout the opinion.

verdicts in favor of Hardwick against all defendants, except Wilkens.

Preslie filed this federal action in 2013, alleging that Vreeken, Dwojak, Wilkens, and Orange County violated her Fourteenth Amendment right to familial association and her Fourth Amendment right against wrongful seizure. In a pretrial motion, she argued that her mother's prior state litigation conclusively determined that her removal from her mother's custody violated her right of familial association. She argued that Defendants Vreeken, Dwojak, and Orange County were precluded from relitigating the issue of liability.

The sole issue presented for review is whether the district court properly concluded that Preslie could not invoke collateral estoppel, which is also referred to as issue preclusion, because the rights at issue in Hardwick's state case and Preslie's federal case were not identical.[2] We have jurisdiction under 28 U.S.C. § 1291 and we affirm. We hold that where constitutional familial rights are at stake, there are identical companionship rights between a parent and child that could allow a plaintiff to invoke issue preclusion to bar relitigation of issues previously decided. In this case, however, Preslie cannot assert issue preclusion because Hardwick litigated more than just the overlapping companionship rights in her state court case and we cannot determine the basis for the jury's verdict.

---

[2] Although the district court and the parties use collateral estoppel and issue preclusion interchangeably, we will follow the California Supreme Court's recent pronouncement that it will use the term "'issue preclusion' to encompass the notion of collateral estoppel." *DKN Holdings LLC v. Faerber*, 352 P.3d 378, 386 (Cal. 2015); *see also NTCH-WA, Inc. v. ZTE Corp.*, 921 F.3d 1175, 1178 n.1 (9th Cir. 2019).

# I. BACKGROUND

A. *Factual Background*

In June 1999, in the midst of contentious custody proceedings, six-year old Preslie and her sister, nine-year old Kendall, were enrolled in therapy to assist with their adjustment to their parents' divorce and their father's remarriage. During the course of this therapy, Kendall disclosed to the therapist allegations of sexual abuse by her father. The therapist reported the allegations to child protective services and, in November 1999, the SSA filed a dependency petition on behalf of Preslie and Kendall.[3] The juvenile dependency court assumed jurisdiction over the children, but the children remained in Hardwick's custody and had supervised visitation with their father.

In December 1999, county social worker Rachel Davis filed a comprehensive report with the dependency court. The report recommended that the children remain in their mother's home under the supervision of the SSA and contingent upon Hardwick's full cooperation with a family case plan. The report also recommended weekly monitored visits between the children and their father. In January 2000, social worker Vreeken assumed responsibility for the Hardwick case.

At a court hearing in early February 2000, the dependency court learned of failed visits and phone calls between the children and their father. The court admonished Hardwick that if she did not comply with the visitation and

---

[3] The petition alleged that Cary Hardwick sexually abused his daughter Kendall and that her parents "knew or reasonably should have known the child was at risk of harm and . . . failed to protect."

phone call schedule, the court would likely remove the children from her care. After another missed visit and after Vreeken represented to the court that Hardwick, in Wilkens's presence, told her daughters that their father was trying to take them away from her, the court ordered the SSA to remove the children from Hardwick's care.[4] Preslie contends that Vreeken and Dwojak made misrepresentations to the dependency court and repeatedly suppressed evidence throughout the dependency proceedings, despite their knowledge that Hardwick was a fit parent.

As ordered by the dependency court, Preslie and Kendall were promptly removed from Hardwick's custody. They were initially placed in a temporary children's shelter and then into a foster home. Eventually, in May 2000, Preslie and Kendall were placed in their father's custody while their mother was allowed supervised visitation. The dependency court ultimately terminated the dependency case and the custody dispute continued in family court.

B. *Hardwick's State Court Case*

In February 2001, Hardwick filed suit in California superior court against various defendants, including Vreeken, Dwojak, Wilkens, and Orange County. She sought damages and injunctive relief. Hardwick alleged, inter alia, that Vreeken and Dwojok's actions deprived her of her Fourteenth Amendment right to familial association with her

---

[4] Although Wilkens was named as a defendant in both Hardwick's state case and in this case, Preslie did not seek to apply issue preclusion against Wilkens, as the state court jury returned a verdict in favor of Wilkens on all of Hardwick's claims. Accordingly, Preslie's claim against Wilkens is not at issue in this appeal.

children.  She also alleged that Orange County failed to supervise and train its SSA social workers.

The state case proceeded to a jury trial.  When instructing the jury on Hardwick's constitutional claim, among other matters, the court instructed the jury that Hardwick had to prove "[t]hat defendant's conduct violated [Hardwick's] right of familial association including her right to the care and custody of her two minor children, Kendall and Preslie; or violated her right to privacy."[5]  Through a series of special verdicts, the jury found that Vreeken and Dwojak "intentionally violate[d] the plaintiff's right to familial association or right to privacy."  The jury also found that Orange County provided inadequate training or supervision to its employees and that its failure to do so was "the cause of the deprivation of [Hardwick's] right of familial association."  The jury awarded Hardwick monetary damages.  The court also entered a permanent injunction enjoining certain practices of SSA social workers when pursuing dependency proceedings.  The California Court of Appeal affirmed the judgment, except for the trial court's award of injunctive relief.[6]

---

[5] The court also instructed the jury on the other elements of Hardwick's claim.  Specifically, the court instructed the jury that Hardwick needed to prove that the social workers "intentionally removed and/or caused the removal and/or detention of" Hardwick's children, "or otherwise interfered with her rights as a parent;" that the social workers "act[ed] or purport[ed] to act in the performance of [their] official duties;" that Hardwick "was harmed;" and that the social workers' "conduct was a substantial factor in" the harm.

[6] The California Court of Appeal took issue with the injunctive relief granted by the trial court.  The injunction permanently restrained Orange County and SSA employees from (1) including allegations in a juvenile dependency petition without reasonable suspicion of abuse, neglect or

C. *Preslie's Federal Action*

Preslie, after obtaining the age of majority, filed this action in September 2013 against various defendants including Orange County, Vreeken, Dwojak, and Wilkens. Preslie alleged that the individual defendants violated her right to be free from unreasonable seizure under the Fourth Amendment and her right to familial association under the Fourteenth Amendment when they caused her removal from her mother's custody without proper or just cause. More specifically, Preslie alleged that the defendant social workers violated her familial associational rights by "unlawfully removing her from the custody and care of her mother and continuing to detain her despite [their] knowledge that she was removed and detained based on Defendants' lies, suppressions, and fabrications." She also brought a *Monell* claim against Orange County, alleging that the County established and/or followed policies that were the moving force behind the violations of her constitutional rights. *See Monell v. Dep't of Soc. Servs.* 436 U.S. 658 (1978).

In a pretrial motion under Federal Rule of Civil Procedure 56(a), Preslie sought summary adjudication of the defendants' liability on her familial association and *Monell* claims. She argued that, in light of the verdicts and judgment in Hardwick's state case, her removal from her mother's custody violated her constitutional right of familial association and that any defenses Vreeken, Dwojak, and Orange County raised or could have "raised in prior

---

abandonment and (2) requiring parents or guardians to sign a temporary release of confidential information without reasonable suspicion. *See Fogarty-Hardwick v. Cnty. of Orange*, No. G039045, 2010 WL 2354383, at *19–20 (Cal. Ct. App. June 14, 2010). The court struck the injunctive relief from the judgment but affirmed the judgment in all other respects.

litigation, have already been conclusively determined in prior litigation." Defendants filed a cross-motion for summary judgment asserting that the claims against the individual defendants were barred by qualified immunity, absolute immunity, or were without merit. They also argued that Preslie's *Monell* municipal liability claim against Orange County was meritless.

In April 2015, the district court granted in part and denied in part the summary judgment and summary adjudication motions. The court rejected Preslie's claim that Vreeken, Dwojak, and Orange County were "collaterally estopped from litigating the issue of liability" and denied her motion. The district court granted summary judgment in favor of Orange County on Preslie's *Monell* claim but rejected the defendant social workers' claim that they were entitled to absolute or qualified immunity.[7]

The remaining claims were tried before a jury. The jury ultimately returned a verdict in favor of Vreeken and Dwojak. Preslie timely appealed. On appeal, Preslie only challenges the district court's ruling that she could not invoke the judgment in Hardwick's case to bar Vreeken, Dwojak, and Orange County from relitigating their liability on Preslie's familial association and *Monell* claims.

---

[7] The defendant social workers filed an interlocutory appeal challenging the denial of their qualified immunity defenses. *See Hardwick v. Cnty. of Orange*, 844 F.3d 1112, 1114 (9th Cir. 2017). In support of their immunity defense, the defendant social workers argued that Preslie's constitutional right to be free from deliberately fabricated evidence had not yet been clearly established in the civil proceeding context. *Id.* at 1116–17. We disagreed and affirmed the district court's order denying absolute or qualified immunity. *Id.* at 1116.

## II. STANDARD OF REVIEW

We review de novo "a district court's summary [adjudication]" and "whether issue preclusion is available." *Sec. & Exch. Comm'n v. Stein*, 906 F.3d 823, 828 (9th Cir. 2018). "If issue preclusion is available, the district court's decision to apply the doctrine is reviewed for abuse of discretion." *Id.*

## III. DISCUSSION

A. *Issue Preclusion*

This appeal turns on whether the district court properly concluded that Preslie could not invoke issue preclusion in her federal case. "[A] federal court considering whether to apply issue preclusion based on a prior state court judgment must look to state preclusion law." *McInnes v. California.*, 943 F.2d 1088, 1092–93 (9th Cir. 1991).

In California, "[i]ssue preclusion prohibits the relitigation of issues argued and decided in a previous case, even if the second suit raises different causes of action." *DKN Holdings LLC v. Faerber*, 352 P.3d 378, 386 (Cal. 2015). Issue preclusion "prevents a party from obtaining a second adjudication of an issue that has already been adjudicated against that party on the merits by a court of competent jurisdiction." *Pajaro Valley Water Mgmt. Agency v. McGrath*, 27 Cal. Rptr. 3d 741, 745 (Ct. App. 2005). Issue preclusion applies: "(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." *DKN Holdings*, 352 P.3d at 387. "The party asserting collateral estoppel [issue preclusion] bears the burden of establishing these requirements." *Lucido v. Superior Court*, 795 P.2d

1223, 1225 (Cal. 1990). "The 'identical issue' requirement addresses whether 'identical factual allegations' are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same." **[8]** *Id.*; *see also Key v. Tyler*, 246 Cal. Rptr. 3d 224, 248 (Ct. App. 2019).

Preslie argues that given the nature of Hardwick's successful lawsuit against the same defendants, the district court erred in refusing to bar Vreeken, Dwojak, and Orange County from relitigating their liability in this case. As we explain, Preslie misperceives the extent of her constitutional right of familial association and she disregards the ambiguity of the state court jury's special verdicts. We address the claims against the individual defendants first and then turn to the *Monell* claims against Orange County.

## B. *Vreeken and Dwojak*

"Parents and children have a well-elaborated constitutional right to live together without governmental interference." *Wallis v. Spencer*, 202 F.3d 1126, 1136 (9th Cir. 2000). "That right is an essential liberty interest protected by the Fourteenth Amendment's guarantee that parents and children will not be separated by the state without due process of law except in an emergency."**[9]** *Id.*

---

**[8]** The parties dispute whether the issues in Preslie's federal case are identical to those in Hardwick's state case, but they do not dispute whether any of the other elements of issue preclusion are satisfied. Thus, this appeal turns on whether the issues in the two proceedings are identical.

**[9]** "Courts have characterized the right to familial association as having both a substantive and a procedural component." *Keates v. Koile*, 883 F.3d 1228, 1236 (9th Cir. 2018). "While the right is a fundamental liberty interest, officials may interfere with the right if they provide the

Moreover, "the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by [the Supreme Court]." *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *see e.g.*, *Pierce v. Soc'y of the Sisters*, 268 U.S. 510, 530, 534–35 (1925) (requiring parents to send their children to public school "unreasonably interferes with the liberty of parents and guardians to direct the upbringing and education of children under their control"). Thus, parents have both a constitutional interest in "the companionship of their children" and a "constitutionally protected interest in raising their children." *Smith v. City of Fontana*, 818 F.2d 1411, 1418 (9th Cir. 1987), *overruled on other grounds by Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999).

The "constitutional interest in familial companionship and society logically extends to protect children from unwarranted state interference with their relationships with their parents." *Id.* at 1418. "The companionship and nurturing interests of parent and child in maintaining a tight familial bond are reciprocal" and the distinction "between the parent-child and the child-parent relationships does not . . . justify constitutional protection for one but not the other." *Id.* at 1418–19. There is "no reason to accord less constitutional value to the child-parent relationship than . . . to the parent-child relationship." *Id.* at 1418. Therefore, "a child's interest in her relationship with a parent is sufficiently weighty by itself to constitute a cognizable liberty interest." *Id.* at 1419. Yet, "[w]hen . . . a child claims constitutional protection for her relationship with a parent,

---

parents with fundamentally fair procedures." *Id.* (internal quotation marks and citations omitted).

there is no custodial interest implicated, but only a companionship interest." *Id.*

Parental claims that their children were unlawfully removed from their custody "should properly be assessed under the Fourteenth Amendment standard for interference with the right to family association."[10] *Wallis*, 202 F.3d at 1137 n.8. However, we "evaluate the claims of children who are taken into state custody under the Fourth Amendment right to be free from unreasonable seizures rather than the Fourteenth Amendment right to familial association." *Keates*, 883 F.3d at 1235 (internal quotation marks omitted). "Despite the different constitutional source of the right, . . . 'the same legal standard applies in evaluating Fourth and Fourteenth Amendment claims for the removal of children.'" *Id.* (quoting *Wallis*, 202 F.3d at 1137 n.8.).

Preslie argues that her familial association claim against Vreeken and Dwojak is identical to the familial association claim that her mother successfully litigated in state court.[11]

---

[10] Although not at issue in this case, we recognize that the First Amendment also protects "those relationships, including family relationships, that presuppose deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life." *Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 545 (1987) (internal quotation marks and citation omitted). Accordingly, we have recognized claims "under both the First and Fourteenth Amendment for unwarranted interference with the right to familial association." *Keates*, 883 F.3d at 1236.

[11] On appeal, Preslie characterizes her familial association claim as a violation of her Fourteenth Amendment rights. In her complaint, however, she alleged violations of both the Fourth and Fourteenth

She contends that "familial association rights are reciprocal, and that a violation to the parent's constitutional rights necessarily violates the constitutional rights of the child."

We agree that a parent's right to associate with her child can overlap with the child's right to associate with her parent.  Companionship rights, for example, are overlapping. *See City of Fontana*, 818 F.2d at 1419 ("[W]hen a child claims constitutional protection for her relationship with a parent, there is no custodial interest implicated, but only a companionship interest.").   Thus, in some instances, the violation of a parent's constitutional right to associate with her child necessarily violates the child's constitutional right to associate with her parent.

Hardwick's state case, however, concerned more than just her right to companionship with Preslie.  In Hardwick's state case, the court instructed the jury  that to establish her claim, Hardwick had to prove that Vreeken violated her "right of familial association including her right to the care and custody of her two minor children . . . *or* violated her right of privacy."  The jury verdict forms in the state case asked jurors whether Vreeken or Dwojak "intentionally violate[d] the plaintiff's right to familial association or right to privacy."  In contrast, in Preslie's federal case, the district court instructed the jury that Preslie had to prove that—but for Vreeken's dishonesty—"there would not have been the juvenile court order removing the plaintiff from her mother's custody."

---

Amendments.  Regardless, as discussed above, the same legal standard applies when evaluating familial association claims under the Fourth or Fourteenth Amendments.  *See Keates*, 883 F.3d at 1235.

Given that Hardwick's state jury returned special verdicts finding that Vreeken and Dwojak violated her right to familial association *or* her right to privacy, we cannot conclude that the jury actually decided that Hardwick's right to familial association was violated. Therefore, the district court did not err in concluding that the issues litigated in Hardwick's state case and Preslie's federal case were not identical. Without identical issues, Preslie could not invoke issue preclusion to bar relitigation. *See Shopoff & Cavallo LLP v. Hyon*, 85 Cal. Rptr. 3d 268, 294 (Ct. App. 2008) ("If anything is left to conjecture as to what was necessarily involved and decided there can be no collateral estoppel . . . . [I]t must appear . . . that the precise question was raised and determined in the former suit.") (internal quotation marks and citations omitted). We affirm the district court's summary adjudication order holding that Vreeken and Dwojak were not precluded from litigating their liability on Preslie's familial association claim.

## C. *Orange County*

Counties "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that [county's] officers." *Monell*, 436 U.S. at 690. Preslie argues that Orange County is precluded from relitigating its liability on her claim that the county's policies and customs were the moving force behind the violation of her right to familial association. She argues that the jury's findings in Hardwick's state case are binding in her federal case.

We disagree. The jury concluded that Orange County's failure to train and/or supervise adequately its employees was the cause of the deprivation of *Hardwick's* right to

familial association and was a substantial factor in causing harm to *Hardwick*.  Yet, as discussed above, Hardwick's constitutional rights, as litigated in her state case, were not identical to Preslie's right to familial association as litigated in her federal case.[12]  Thus, we agree with the district court that "the 'precise question' presented [] against the County was not 'raised and determined in the former suit.'" (quoting *Shopoff*, 85 Cal. Rptr. 3d at 294).  We therefore affirm the district court's ruling that Preslie could not rely on issue preclusion to bar Orange County from relitigating its liability under *Monell*.[13]

## IV. CONCLUSION

We have long held that children have a constitutional interest in familial companionship.  *City of Fontana*, 818 F.2d at 1418.  As our case law recognizes, the companionship rights between a parent and a child are identical such that a plaintiff could invoke issue preclusion to bar litigation in the appropriate case.  Nonetheless, we agree with the district court that Preslie cannot do so here

---

[12] As we stated with respect to individual defendants Vreeken and Dwojak in Part III.B, above, "Hardwick's state case, however, concerned more than just her right to companionship with Preslie.  In Hardwick's state case, the court instructed the jury that to establish her claim, Hardwick had to prove that Vreeken violated her 'right of familial association including her right to the care and custody of her two minor children . . . or violated her right of privacy.'"

[13] Preslie concedes that her municipal liability argument turns on whether the district court erred when it determined that issue preclusion did not bar Orange County from litigating Preslie's *Monell* claim.  She does not argue that even if the district court did not err in denying her summary adjudication motion, it erred when it granted the County's summary judgment motion on Preslie's *Monell* claim.  Thus, we do not address the underlying merits of Preslie's *Monell* claim.

because she failed to establish that the issues litigated in the prior state proceeding were identical to the issues raised in her federal case.

**AFFIRMED.**

TASHIMA, Circuit Judge, concurring in part and concurring in the judgment:

I concur in the majority's affirmance of the district court's order declining to apply issue preclusion in Plaintiff Preslie Hardwick's favor on the ground that the state superior court's jury instruction contained the seed of ambiguity when the earlier state-court jury was instructed "that Hardwick had to prove '[t]hat defendant's conduct violated [Hardwick's] right of familial association including her right to the care and custody of her two minor children . . . *or* violated her right to privacy.'" Maj. Op. at 8 (emphasis added). The majority rightly concludes that because the "state jury returned special verdicts finding that [defendants] violated her right to familial association *or* her right to privacy, we cannot conclude that the jury actually decided that Hardwick's right to familial association was violated." *Id.* at 16. Thus, because the issues in the state and federal cases were not *identical*, issue preclusion to bar relitigation does not apply. "If anything is left to conjecture as to what was necessarily involved and decided" in the earlier case, issue preclusion does not apply." *Shopoff & Cavallo LLP v, Hyon*, 85 Cal. Rptr 3d 268, 294 (Ct. App. 2008).

The above brief discussion of the consequences of an ambiguous jury instruction/special verdict largely tracks the majority's own reasoning. Because plaintiff failed to meet

the "identical issue" test, issue preclusion does not apply, and that should end the majority's analysis.

The majority opinion, however, contains an extended and unnecessary discussion of the contours of the familial association right, *see* Maj. Op. at 13–16, which includes an unfortunate snippet from *Smith v. City of Fontana*, 818 F.2d 1411, 1419 (9th Cir. 1987), that "when a child claims constitutional protection for her relationship with a parent, there is no custodial interest implicated, but only a companionship interest." Maj. Op. at 15. But this snippet is no more than a throw-away line, made without any analysis and, as important, without the citation of any state[1] or federal case in support of the proposition. It does not deserve deference as binding precedent. *See, e.g., Barapind v. Enomoto*, 400 F.3d 744, 750–51 (9th Cir. 2005) (en banc).

In fact, California case law clearly demonstrates that a child has a separate, correlative interest in her own custody. For example, in *Kern Cty. Dep't of Hum. Servs. v. Debbie H. (In re Marilyn H.)*, 851 P2d 826 (Cal. 1993), the California Supreme Court stated:

> The federal and state Constitutions guarantee that no state shall deprive any person of life, liberty or property without due process of law. A parent's interest in the companionship, care, custody and

---

[1] It is, of course, state law that creates and gives rise to liberty and property interests protected by the Constitution. "Like property rights, liberty interests can be defined by state law. 'States may under certain circumstances create liberty interests which are protected by the Due Process Clause.'" *Marsh v. County of San Diego*, 680 F.3d 1148, 1155 (9th Cir. 2012) (quoting *Sandin v. Conner*, 515 U.S. 472, 483–84 (1995)).

> management of his children is a compelling one, ranked among the most basic of civil rights.   Likewise, natural *children have a fundamental independent* interest in belonging to a family unit, and they have compelling rights to be protected from abuse and neglect and to have a placement that is stable, permanent, and that which allows the caretaker to make a full emotional commitment to the child.  The interests of the parent and child, therefore, must be balanced.

*Id.* at 833 (emphasis added).

In *San Diego Cty. Dep't of Soc. Servs. v. Gavin O. (In re Jasmon O.)*, 878 P.2d 1297 (Cal. 1994), the California Supreme Court similarly stated that the parent's "fundamental right to maintain the parent-child bond and to the care, custody and companionship of his or her child" is "not absolute and may be abridged when necessary to do so to protect the welfare of the child." *Id.* at 1307.  "Children are not simply chattels belonging to the parent, but *have fundamental interests of their own that may diverge from the interests of the parent.*"   *Id.* (emphasis added).   The overarching purpose of California's child custody law is "the best interest of the child."  *See Montenegro v. Diaz*, 27 P.3d 289, 293 (Cal. 2001) ("Under California's statutory scheme governing child custody and visitation determinations, the overarching concern is the best interest of the child."); *see also* Cal. Fam. Code § 3041(a) ("Before making an order granting custody to a person other than a parent, over the objection of a parent, the court shall make a finding that granting custody to a parent would be detrimental to the child and that granting custody to the nonparent is required to serve the best interest of the child.").  Embedded in that

purpose is the notion that a child's custody interest is separate from her parents' right and may even override the latters' right.

In light of the clarity and consistency of California case law, it is likely that *Smith*'s drive-by dictum wrongly construed California law. But we need not reach the issue in this case because plaintiff's failure to meet the "identical issue" requirement precludes the application of issue preclusion. Thus, any discussion of what separate right or interest a child has to her own custody is purely *obiter dictum* and we should not unquestioningly follow *Smith.*

Thus, while I concur in the judgment on the ground that plaintiff has failed to establish the application of issue preclusion because of the special verdict's ambiguity, I dissociate myself from the majority's assertion that a child's correlative right of familial association includes no custody component. I would leave that decision for another day.

With this qualification, I concur in the judgment.